282 F.2d 607
 LINDSEY-ROBINSON & COMPANY, Incorporated, Appellant,
v.
Robert C. GRADY, Trustee in Bankruptcy of Egbert Cecil Witherow, Sr., Egbert Cecil Witherow, Jr., each individually and as co-partners, t/a Zeus Hatchery, Bankrupts, Appellee.
 No. 8044.
 United States Court of Appeals Fourth Circuit.
 Argued April 20, 1960.
 Decided August 19, 1960.
 
 Thomas C. Phillips, Jr., and E. Griffith Dodson, Jr., Roanoke, Va. (Dodson, Pence & Coulter, Roanoke, Va., and J. L. Fray of Fray & Hudson, Culpeper, Va., on brief), for appellant.
 A. Stuart Robertson, Jr., and Robert C. Grady, Orange, Va. (Shackelford & Robertson, Orange, Va., on brief), for appellee.
 Before SOPER, HAMLEY* and BOREMAN, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 In the above-entitled bankruptcy proceeding the referee determined that the trustee is the owner of certain flocks of chickens. Lindsey-Robinson Company, Inc., asserting an interest in the flocks, petitioned the district court to review the order. The district court affirmed the order of the referee, and Lindsey-Robinson has appealed. Two questions are presented here: Whether the referee had summary jurisdiction to make this determination, and if so whether the determination is correct.
 
 
 2
 On June 20, 1959, E. C. Witherow, Sr., and E. C. Witherow, Jr., partners trading as Zeus Hatchery, filed a partnership petition in bankruptcy. On June 22 the partners were duly adjudicated bankrupts. A first meeting of creditors was held on July 10, at which time Robert C. Grady was appointed trustee and thereafter qualified. A second meeting of creditors was held on September 23.
 
 
 3
 At this meeting the trustee claimed ownership of certain flocks of chickens and requested that the referee so determine as an exercise of summary jurisdiction of the bankruptcy court. Counsel for Lindsey-Robinson claimed both title and possession of the flocks for that company and objected to a summary adjudication of the controversy.
 
 
 4
 The referee held that in order for him to decide whether the bankruptcy court had summary jurisdiction it would be necessary to take evidence concerning possession of the flocks and the conflicting claims of ownership.[1] Four witnesses testified and a number of exhibits were received. There are set out below the facts bearing on the questions of summary jurisdiction and ownership, as developed at this hearing on evidence which is essentially undisputed.
 
 
 5
 Lindsey-Robinson is a manufacturer of feeds. Zeus Hatchery was a dealer in feeds and the operator of a hatchery. On June 8, 1955, the two entered into a written agreement prepared by Lindsey-Robinson and entitled "Fair-Acre Farm production plan." One of the stated purposes of this contract was to provide a means of financing the purchase of feed used in commercial farm production. Reference was made therein to certain forms which under indicated circumstances were to be executed by Zeus and delivered to Lindsey-Robinson. Described as "Form LR C-5, `Notice of Assignment and Report,'" their function as contemplated by the "Fair-Acre" contract will be discussed at a later point in this opinion.
 
 
 6
 While this contract was in effect, Zeus placed a flock which it owned, consisting of 8,200 chickens, on its "4 Acres Farm" at Madison, Virginia, intending to raise the chickens as broilers and layers. Apparently no other farmer or grower was involved in this enterprise. Desiring to finance the purchase of feed needed for this flock, Zeus on November 28, 1958, executed and delivered to Lindsey-Robinson a "Notice of Assignment and Report," as set out in the margin.[2] On the same date Zeus executed and delivered to Lindsey-Robinson a similar document with regard to its flock of 14,350 chickens which Zeus had placed on its "Hilltop Farm" at Madison.
 
 
 7
 On October 14, 1958, Zeus placed two flocks which it owned, consisting of 6,102 chickens, on the farm of Sterling Gibson, a grower at Ruckersville, Virginia. It was arranged that Zeus would pay Gibson for the care of these flocks ninety dollars a week and twelve cents a dozen for the eggs which were produced. Zeus also paid the electric bill and provided the feed. Desiring to finance the purchase of this feed from Lindsey-Robinson, Zeus on December 15, 1958, executed a "Notice of Assignment and Report" of the kind set out in footnote 2.
 
 
 8
 Like financing arrangements were also in effect covering other flocks. Until February 20, 1959, Zeus exercised exclusive control of the sale of eggs and poultry and the disposition of proceeds with regard to all flocks. On the latter date Lindsey-Robinson, being dissatisfied with the Zeus management, required that on sales made by Zeus involving all financed flocks payments be made jointly to Lindsey-Robinson and Zeus. On the same date the three "Notice of Assignment and Report" documents described above were signed and acknowledged by L. A. Robbins for Lindsey-Robinson and were recorded. Recordation was in the agricultural deed of trust book in the office of the clerk of the Circuit Court of Madison County, Virginia.
 
 
 9
 On May 22, 1959, Lindsey-Robinson wrote to Zeus with reference to all of the flocks being financed under "Notice of Assignment and Report" documents. In this letter Zeus was told that pursuant to these documents and the "Fair-Acre Farm Production Plan" Lindsey-Robinson was then taking possession of all of the property described in the three documents. Zeus was also advised that its agreement with Lindsey-Robinson was canceled.
 
 
 10
 After this letter was sent no change was made in the location of the flocks here in question. One remained on "4 Acres Farm" and one remained on "Hilltop Farm," both owned by Zeus. No rental arrangement was entered into with Zeus concerning these flocks, though Lindsey-Robinson offered to do so. The other two flocks remained on the Gibson farm. There had been no rental arrangement between Zeus and Gibson regarding these flocks, nor did Lindsey-Robinson enter into such an arrangement with Gibson after sending the letter of May 22.
 
 
 11
 Lindsey-Robinson designated one of its employees to supervise the care of the four flocks. This supervision was instituted on June 1, 1959, and was accomplished by means of weekly and sometimes daily contact with those who were caring for the flocks. After that date Lindsey-Robinson supplied the feed for all flocks, handled the sale of eggs and poultry, and after deducting costs credited the net proceeds against the Zeus account.
 
 
 12
 Beginning June 1, 1959, Lindsey-Robinson paid the weekly salaries and social security taxes of those who were caring for the two flocks located on the Zeus farms. That company also continued the financial arrangements with Gibson which Zeus had originally undertaken. Zeus and Gibson, respectively, acquiesced in the described actions of Lindsey-Robinson, including entry upon their premises, except that Gibson would not permit Lindsey-Robinson to carry out the latter's culling program.
 
 
 13
 Based on the foregoing facts, the referee determined that the bankruptcy court was empowered to adjudicate the ownership of the four flocks as an exercise of summary jurisdiction.[3] The referee further held that Lindsey-Robinson had no interest in the flocks. In reaching this conclusion the referee determined that Lindsey-Robinson's interest could not have been more than a lien but that it was not established as such because of noncompliance with the statutes of Virginia relating to chattel deeds of trust. It was further held that the trustee was the sole and exclusive owner of the flocks.
 
 
 14
 On review the district court sustained the referee with respect to both summary jurisdiction and ownership of the flocks. As stated at the outset of this opinion, both of these questions are renewed here. We consider first the question of summary jurisdiction.
 
 
 15
 The bankruptcy court has summary jurisdiction with respect to property in its actual or constructive possession,[4] and also with respect to property not within its actual or constructive possession, if the claimant consents thereto.[5]
 
 
 16
 The referee in effect held that actual possession of the flocks was in the bankruptcy court but that, if not, that court at least had constructive possession of the flocks. In either case, under the rule stated above the bankruptcy court would have had summary jurisdiction. The district court reached the same conclusion. If this view as to either actual or constructive possession is sustainable under the given facts, summary jurisdiction was established.
 
 
 17
 With respect to actual possession we reach a contrary conclusion. Considering first the two flocks left on Zeus property, the facts indicate that Lindsey-Robinson exercised complete control and dominion after June 1, 1959. From that time on the company provided all feed at its own expense, paid for all work performed in caring for the flocks, sold eggs and poultry, and disposed of the proceeds.
 
 
 18
 It is true that the flocks remained on the Zeus premises, due to the fact that it is impracticable to move flocks of laying hens. But Lindsey-Robinson representatives entered the premises to supervise the care of the flocks, apparently with the complete acquiescence of Zeus. There was no rental arrangement between the parties. It appears to us, however, that all concerned regarded the "Notice of Assignment and Report" documents which Zeus executed on November 28, 1958, as in effect granting Lindsey-Robinson a license to enter the premises if and when necessary to enforce its rights. Under these circumstances we conclude that the bankruptcy court did not obtain actual possession of the two flocks on the Zeus property.
 
 
 19
 Concerning the two flocks located on the Gibson farm, there are different facts to be considered. Zeus gave up actual possession of these flocks when it placed the chicks on the Gibson farm. Gibson then became the bailee of the flocks under a contract which required him to also render services for their care. In Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 432-433, 44 S.Ct. 396, 68 L.Ed. 770, it was pointed out that where the bankrupt's property is in the hands of his agent or bailee he does not have actual possession of such property but has constructive possession. It follows that in the case of the Gibson flocks, as well as the two Zeus flocks, the bankruptcy court did not gain actual possession on June 20, 1959, when the petition in bankruptcy was filed.
 
 
 20
 We come, then, to the question of whether on that date Zeus had, and the bankruptcy court therefore obtained, constructive possession of the four flocks. If so, as pointed out above, that court had summary jurisdiction to deal with the property just as completely as if it had gained actual possession.
 
 
 21
 With regard to this question a preliminary observation should be made concerning the flocks on the Gibson farm. It was stated above that when Zeus placed these flocks on the Gibson farm it gave up actual possession but retained constructive possession. But the bailor-bailee relationship under which this constructive possession was retained was interrupted in June 1, 1959. On that date Lindsey-Robinson stepped into the shoes of Zeus with regard to the Gibson flocks. From that time on Gibson was the bailee of Lindsey-Robinson and not of Zeus. It follows that if Zeus, and hence the bankruptcy court, had constructive possession of the Gibson flocks on June 1, 1959, it was not by virtue of any bailor-bailee relationship between Zeus and Gibson.
 
 
 22
 In Taubel-Scott-Kitzmiller Co., Inc. v. Fox, supra, at pages 432-433, a variety of circumstances are described under any of which it may be held that the bankruptcy court has constructive possession of property actually held by another. Included in these is the case where the property is held by one who makes a claim to it but the claim is colorable only.
 
 
 23
 From what has been stated above it is established that Lindsey-Robinson through its own employees or bailee held the four flocks on June 20, 1959, when the petition in bankruptcy was filed. That company also asserts a claim to all four flocks. Under the rule of the Taubel case referred to above it therefore remains to be determined whether such claim is colorable only.
 
 
 24
 A claim is not substantial but is merely colorable when the claimant's contention fails to disclose "a contested matter of right, involving some fair doubt and reasonable room for controversy." Harrison, Trustee v. Chamberlin, 271 U.S. 191, 195, 46 S.Ct. 467, 469, 70 L.Ed. 897.[6]
 
 
 25
 The claim to the four flocks which Lindsey-Robinson here asserts is that of a common-law chattel mortgagee in possession. On oral argument appellee conceded that common-law chattel mortgages are recognized in Virginia. Since this is the nature of the claim, the fact that the form and recordation of the documents relied upon did not comply with Virginia statutes relating to chattel deeds of trust is immaterial. Thus, the reason given by the referee and district court for rejecting the claim, renewed here by the trustee, is not supportable. But since the order under review must be affirmed if correct on any ground, it remains to be determined whether there is substance to the chattel mortgage claim.
 
 
 26
 The documents relied upon by Lindsey-Robinson are the "Fair-Acre Farm Production Plan" and the three instruments denominated "Notice of Assignment and Report." The "Fair-Acre" contract provides in part that Zeus is to "devise a financing plan" under which credit may be extended by Zeus to farmers desiring to buy Lindsey-Robinson feed for the production of pullets, market eggs, hatching eggs and the like. As security for feeds financed by Lindsey-Robinson, the latter may under the contract require Zeus to assign to Lindsey-Robinson the rights of Zeus in such agreements with farmers. Such assignments, it is provided, are to be made on "Form No. LR C-5, `Notice of Assignment and Report.'"
 
 
 27
 The "Fair-Acre" contract also provides that with regard to the production of broilers Zeus is to execute a written contract or agreement with the grower "for each project started." Concerning such projects Zeus agrees to furnish Lindsey-Robinson "reports of projects started each week under this plan on Form No. LRC-5." It is further provided that "this report [Form LRC-5] also serves as an assignment of Dealer's rights or security to Company in the broiler projects * * *."
 
 
 28
 It therefore appears that the document denominated "Fair-Acre Farm Production Plan" was not itself a chattel mortgage. It did not identify any property covered by a mortgage or describe the debts or liabilities secured. It spoke only in futuro of possible financing arrangements to pay for feed which might be purchased. Moreover, as to future financing no mention was made of a direct chattel mortgage as between Zeus and Lindsey-Robinson covering purchase of feed for Zeus flocks. The most that was contemplated was an assignment by Zeus to Lindsey-Robinson, for a twelve-month period, of rights obtained by Zeus under its financing contracts with farmers and of its rights or security under written contracts or agreements with growers relating to the care of broilers.
 
 
 29
 Even if this contract should be construed as a chattel mortgage, however, the fact that it was not recorded deprived it of any standing in support of the chattel mortgage claim of Lindsey-Robinson. A claim based on a chattel mortgage could not prevail as against the trustee unless it would have been good as against a creditor without actual notice who had successfully levied on the flocks at the date of bankruptcy.[7] Needless to say, a chattel mortgage, though complete and valid in every other respect, is not good against such a creditor unless recorded prior to the latter's levy.
 
 
 30
 We must look, then, to the documents styled "Notice of Assignment and Report" if we are to find a chattel mortgage. They do not purport to fulfill the purpose ascribed to them in the "Fair-Acre" contract, since they do not assign to Lindsey-Robinson any rights which Zeus held under financing contracts with farmers or under written contracts or agreements with growers relating to the care of broilers. Nor could they have done so with respect to the two flocks located on the Zeus property, for Zeus had not entered into any financing or other contracts with others concerning those flocks. And, as pointed out above, if they had been consistent with the "Fair-Acre" contract they could not have been chattel mortgages because no such function was reserved for them in that contract.
 
 
 31
 This inconsistency between the three documents under discussion and the "Fair-Acre" contract does not preclude them for being regarded as chattel mortgages if that is their true character. It does, however, demonstrate that little aid in arriving at that conclusion can be gained by examining the basic "Fair-Acre" contract.
 
 
 32
 The "Notice of Assignment and Report" documents, as set out in footnote 2, do not purport to be chattel mortgages. In terms they are assignments of the interest of Zeus in described personal property. Moreover, there is no general or specific mention in these documents of any indebtedness, either as to amount or how evidenced, whether by promissory notes or otherwise. No creditor could tell by examining these documents or the "Fair-Acre" contract what sum of money the documents were given to secure or the terms of payment. Access to the books of Lindsey-Robinson, if available to a creditor, would presumably reveal the total indebtedness of Zeus to Lindsey-Robinson. There is nothing in the document, however, to indicate whether all or a part or none of such indebtedness is intended to be secured by each individual document.
 
 
 33
 Unless such an implication is to be drawn from the fact that the "assignment" was for the limited period of twelve months, these documents do not purport to be security instruments of any kind. Instead, they are in terms assignments of all interest for a limited period. This is exactly what Lindsey-Robinson claimed for them at the hearing before the referee, as both the referee and district court have noted. At the outset of that hearing counsel for Lindsey-Robinson stated that "it is the position of Lindsey-Robinson & Company that Lindsey-Robinson & Company held both title and possession at the time the petition was filed." No mention was made of chattel mortgages, or of any other lien interest at that time.
 
 
 34
 The conduct of the parties after execution of the "Notice of Assignment and Report" documents was also entirely inconsistent with the existence of a chattel mortgagor-mortgagee relationship between them. Thus, on several other flocks covered by similar notices "of assignment and report" Zeus proceeded just as if it were sole owner, selling from $35,000 to $40,000 worth of chickens and purporting to pass clear title to such chickens. The testimony of E. C. Witherow, Jr., that as to these other flocks the purpose of supplying the notices was to provide Lindsey-Robinson with information as to how many chickens were being fed, was not disputed. It was apparent only with respect to flocks which came into Lindsey-Robinson's possession that the notices were regarded by the latter as security documents. But the manner in which Lindsey-Robinson came into possession of the flocks and the action it took after it obtained possession are also inconsistent with such a relationship. Lindsey-Robinson purported to cancel its agreement with Zeus and took over the flocks on the strength of a simple letter notifying Zeus that it was taking possession. There was no foreclosure of the mortgage.
 
 
 35
 In our opinion Lindsey-Robinson was not a common-law chattel mortgagee in possession on the day of bankruptcy. This conclusion is based on facts which are not in substantial dispute and upon principles of law concerning which we believe there is no fair doubt or reasonable room for controversy. It follows that the claim is colorable only.
 
 
 36
 This being so, the bankruptcy court obtained constructive possession of the flocks when the petition in bankruptcy was filed. Under principles which have been stated above that court was therefore empowered to adjudicate ownership of the flocks in the exercise of summary jurisdiction.
 
 
 37
 The conclusion reached on the question of summary jurisdiction necessarily disposes of the remaining question as to the correctness of the adjudication of ownership. Since Lindsey-Robinson had no chattel mortgage and claimed no other interest, and there is no other claimant, the trustee is the owner.
 
 
 38
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation of the Chief Justice
 
 
 [1]
 While one of the attorneys for Lindsey-Robinson objected to the taking of any testimony, his co-counsel conceded that this was a proper course and stated, "* * * we are prepared to offer evidence to prove that our claim is valid." However, Lindsey-Robinson did not produce any evidence at the hearing which then proceeded
 
 
 [2]
 
 "Notice of Assignment and Report FAIR-ACRE FARM
 PRODUCTION PLAN No. 106
 To: LINDSEY-ROBINSON AND COMPANY, INC., ROANOKE, VA.
 From: Zeus Hatchery WEEKDAY: Friday
 Madison, Va. DATE: November 28, 1958
 In accordance with provisions of the Fair-Acre Farm Production Plan dated June 8, 1955, an agreement between the undersigned dealer and Lindsey-Robinson & Company, Inc., and for value received, the undersigned dealer hereby transfers, sets over and assigns for a period of twelve months hereafter unto the manufacturer, Lindsey-Robinson & Company, Inc., of Roanoke, Virginia, his rights and interests in the following described personal property and any monies to which the undersigned dealer is entitled therefor.
 ----------------------------------------------------------------------------
 | | POULTRY OR | |
 | | LIVESTOCK | | EXPECTED
 NAME OF FARMER | | ----------------- | DATE | MARKETING
 OR GROWER | ADDRESS | QUANTITY: KIND | STARTED | DATE
 | | | |
 ----------------------------------------------------------------------------
 E. C. Witherow, Jr. Zeus Hatchery 8200 Hy-Lines May 30, 1958 First eggs
 4 Acres Farm Madison, Va. sold Nov.
 6, 1958
 Virginia: In the office of the Clerk of the Circuit Court of Madison County, the 20th day of February, 1959 at 1:00 o'clock P.M. Docketed in Agricultural Chattel Deed of Trust Book 1, Page 269.
 Teste: Charles J. Ross, Clerk
 Dealer certifies above information to be correct as of this date.
 Zeus Hatchery Lindsey-Robinson & Co., Inc.
Madison, Va. Roanoke, Virginia
— Dealer, Assignor — — Manufacturer, Assignee —
By (s) E. C. Witherow, Jr. By (s) L. A. Robbins"
 
 
 [3]
 The referee also held that Lindsey-Robinson had waived its right to object to the exercise of summary jurisdiction. On review the district court did not deal with the question of waiver, and we find it unnecessary to do so
 
 
 [4]
 Kohn v. Myers, 2 Cir., 266 F.2d 353, 355, and cases there cited; 2 Collier on Bankruptcy, 14th ed., § 23.04, page 450
 
 
 [5]
 Moonblatt v. Kosmin, 3 Cir., 139 F.2d 412; 1 Collier, supra, 1959 Cum.Supp., § 2.01, page 140. See, also, § 2, sub. a (7) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a (7), as amended in 1952
 
 
 [6]
 See, also, In re Meiselman, 2 Cir., 105 F.2d 995, 997; In re Quan Weing, 2 Cir., 104 F.2d 112; Board of Education of Salt Lake City, Utah v. Leary, 8 Cir., 236 F. 521, 525; 2 Collier, supra, § 23.07, pages 510-512
 
 
 [7]
 Section 70, sub. c of the act, 11 U.S. C.A. § 110, sub. c; 4 Collier, supra, § 70.56, page 1453